IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KEVIN F. MULHALL,

                Plaintiff,

      vs.

CAROLYN W. COLVIN, Commissioner of
Social Security,

              Defendant.

**8:11CV441**

**MEMORANDUM AND ORDER**

       This matter is before the court on plaintiff's appeal of an adverse decision by the Social Security Administration.  Filing No. 1.  This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") finding that plaintiff is not disabled.  The plaintiff appeals the Commissioner's decision to deny his applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

       On May 1, 2006, plaintiff Kevin Mulhall ("Mulhall") suffered a stroke, resulting in right arm and leg weakness and spasticity.  The parties all agree that Mulhall was entitled to benefits prior to February 6, 2008, and that finding is not an issue in this case.  The issue is whether Mulhall is entitled to benefits post-February 6, 2008.  On July 14, 2006, Mulhall filed a claim for disability insurance benefits under the Social Security Act. Filing No. 1.  The administrative law judge ("ALJ") determined that Mulhall was not disabled.  Mulhall was 47 years old at the relevant time relating to this claim, had his M.B.A., and prior to the stroke worked as a business consultant and for a

certified public accounting firm.  The Appeals Council reversed the ALJ, finding Mulhall disabled for the time period of May 1, 2006, through February 6, 2008.  Filing No. 14-2 at 20; Tr. at 13-23.  The Appeals Council issued a partially favorable decision on October 25, 2011.  Tr. at 13-23.  The Appeals Council, however, found Mulhall not disabled post-February 6, 2008.  Mulhall timely filed additional evidence and submitted it to the Appeals Council, as discussed hereinafter.  The Appeals Council did not consider the additional medical evidence filed by Mulhall, and in fact stated that no additional comments or evidence had been received.  Tr. At 19.  Mulhall then attempted to informally request a review and reopening of the additional evidence the Appeals Counsel failed to review.  Mr. Mulhall received no response to his request.

Mulhall stated in his Disability Report that his daily activities include bathing, dressing, eating, attending therapy, exercising on his own, and resting.  Tr. at 162.  He cannot button or zip zippers nor can he wear shoes with laces.  *Id.*  He states he cannot cook.  *Id.*  He cannot use a chair or a ladder or a broom.  *Id.*  He does pull weeds and water plants.  *Id.*  He drives for short periods of time but can no longer do any of his hobbies such as golfing or running.  He stated he can walk about four blocks without a cane.  *Id.* at 163.  He has no trouble sitting.  The right side of his body is still weak with paralysis, and he can only occasionally grasp a small item with his right index finger and thumb.  *Id.* at 164.

On December 22, 2011, Mulhall filed for review in this court seeking a determination that:  the Appeals Council's decision, that he was no longer disabled after February 5, 2008, was not supported by substantial evidence; that he is totally disabled; that he is eligible for all benefits past, present, and future; that the Appeals Council

failed to consider all relevant evidence; and that he should receive reasonable attorney fees.  Filing No. 1.  The Commissioner filed a motion to remand in this case on August 2, 2012. Filing No. 22.  The court denied the motion for remand.  Filing No. 24.  The court will now proceed to determine the merits of the appeal.

### STANDARD OF REVIEW

A district court has jurisdiction to review a decision to deny disability benefits under 42 U.S.C. § 405(g).  *See also* 42 U.S.C. § 1383(c)(3).  A district court must determine whether the ALJ's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).  Substantial evidence is defined as relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Martise v. Astrue*, 641 F.3d 909, 921 (8th Cir. 2011).  However, "substantial evidence on the record as a whole" requires a more scrutinizing analysis.  *Id.*  When determining whether substantial evidence exists, the court considers evidence that supports the Commissioner's conclusion, along with evidence that detracts from that conclusion.  *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).  Further, the court reviews an ALJ's legal conclusions de novo.  *See Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004).

In order to qualify for benefits under the Social Security Act and accompanying regulations, an individual must be disabled.  *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months.  *Id.*; 42 U.S.C. § 1382c(a)(3)(A).  To determine disability, an ALJ follows a familiar five-step process, considering:  (1) whether the claimant was employed; (2) whether he or she was severely impaired; (3) whether his or her impairment was equal or equivalent to a presumptively disabling condition listed in Appendix 1 of Subpart P of the Social Security regulations ("the Listings"); (4) whether he or she could perform past relevant work; and, if not, (5) whether he or she could perform any other kind of work.  20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a).

The burden is on the claimant to establish that his impairment or combination of impairments is severe.  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  Although the requirement of severity is not an "onerous requirement," neither is it a "toothless standard."  *Id.* at 708.  An "impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Id.*; 20 C.F.R. § 404.1521(a).  To qualify as disabled under a Listing, the claimant has the burden to establish his condition meets or equals all specified medical criteria.  *See McCoy v. Astrue*, 648 F.3d 605, 611–12 (8th Cir. 2011).

A finding that a claimant's impairment is not equal to a listed impairment does not end the inquiry.  *Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003).  An impairment can be found to be medically equivalent to a listed impairment in Appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment.  20 C.F.R. § 404.1526.  The determination of medical equivalence is based on medical evidence, supported by acceptable laboratory and clinical diagnostic techniques.  *Id.*  Whether the findings for an individual's impairments meet the requirements of an impairment in the

Listings is usually more a question of medical fact than a question of medical opinion. Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, Soc. Sec. Rul. 96-5P, 1996 WL 37418 (July 2, 1996).  For cases at the administrative law judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the administrative law judge or Appeals Council.  20 C.F.R. § 404.1526(e).

It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.  *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (noting that "Social Security proceedings are inquisitorial rather than adversarial.").  It is well settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician.  *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) ("The ALJ possesses no interest in denying benefits and must act neutrally in developing the record").  The duty to develop the record extends to cases where the claimant is represented by counsel.  *Id.*  The ALJ's duty to develop the record in a Social Security hearing may include seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped.  *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (holding that it was improper for an ALJ to rely on the opinions of reviewing physicians alone).

The determination of a claimant's residual functional capacity ("RFC") is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, i.e., eight hours a day, five days a week, or an equivalent work schedule.  *Id.*, Soc. Sec. Rul. 96-8p (1996).  RFC is not based solely on "medical" evidence; rather, the Commissioner must determine a

claimant's RFC based on all of the relevant evidence, including medical records, observations of treating physicians and others, and an individual's own description of the limitations. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). When a claimant suffers from exertional and nonexertional impairments, and the exertional impairments alone do not warrant a finding of disability, the ALJ must consider the extent to which the nonexertional impairments further diminish the claimant's work capacity. *McGeorge v. Barnhart,* 321 F.3d 766, 768 (8th Cir. 2003). The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence. *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998).

The Medical-Vocational Guidelines, a grid that accounts for an individual's RFC and various other vocational factors, such as age and educational background, is included in the regulations to provide guidance at step five of the sequential analysis. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." *Id.*, § 200.00. If an impairment affects the claimant's ability to meet job demands other than strength, the Medical-Vocational Guidelines are not directly applied but "provide a framework to guide [the] decision." 20 C.F.R. § 404.1569a(d). Under the Medical-Vocational Guidelines, an individual who is "closely approaching advanced age"—that is, age fifty to fifty-four—is disabled if his maximum sustained work capability is limited to sedentary work as a result of severe medically determinable impairments and he has "limited or less" education or is a high school graduate or more without a recently completed education that provides for direct entry

into sedentary work, and he has no past relevant work experience or only unskilled work experience.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g) and Table 1.

A claimant's subjective complaints may be disregarded based on evidence in the record as a whole, but the ALJ may not discount subjective complaints of pain solely because they are not fully supported by objective medical evidence.  *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).  When assessing the credibility of a claimant's subjective allegations of pain, the ALJ must consider the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  When an ALJ rejects a claimant's complaints of pain, he or she must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the *Polaski* factors.  *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).  An ALJ is entitled to find a failure to seek medical attention is inconsistent with complaints of pain, but a lack of financial resources may in some cases justify the failure to seek medical attention or failure to follow prescribed treatment.  *See Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987); *Brown v. Heckler*, 767 F.2d 451, 453 n.2 (8th Cir. 1985).

A vocational expert's testimony constitutes substantial evidence only when it is based on a hypothetical that accounts for all of the claimant's proven impairments. *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010).  "The hypothetical 'need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but

instead should capture the concrete consequences of those impairments.'"  *Id.* (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (internal quotation omitted)).

## DISCUSSION

Medical Evidence

The ALJ found that as of May 1, 2006, claimant met the requirements of the Listing 11.04B, based on an opinion issued by Richard S. Polin, M.D., a medical consultant for the Social Security Administration.   On appeal, the Appeals Council stated:

> claimant presented with a left parietal stroke that caused right sided weakness with the arm weaker than the leg and spasticity.  He noted that while the claimant's right leg was not as weak as his arm, both extremities were significantly weak and spastic, thus meeting the requirements of Listing 11.04B.   However, Dr. Polin also noted that the claimant's leg strength had improved and returned to normal by February 2009, resulting only in a weakened right arm that does not meet a listing level impairment. . . .   Dr. Polin opined claimant was disabled from May 1, 2006 through February 6, 2008. . . .   Accordingly the Appeals Council gives substantial weight to this opinion and finds that the claimant's severe impairment met Listing 11.04B beginning May 1, 2006 through February 6, 2008, as a result of significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station.

Tr. at 14-2, page 20.  The Appeals Council further stated on April 1, 2011:

> From the AOD and extending at least a year, the claimant had significant right arm and leg weakness and spasticity to meet listing 11/04B.  While the leg was not as weak as the arm, it was [w]eek [sic] and spastic, meeting the requirements of that listing.  By 2/09 however, leg strength had returned to normal and impairment was only in the right arm which does not meet listings and the later opinion that disability was maintained does not take the listings into account.  The key in this case is determining when leg strength returned to cease meeting listing 11.04B.  Since there is no evidence offered from a period between 2/07 and 2/09, this has to be estimated.  The 2/07 note (12 F [Dr. Kip Burkman's opinion letter found at Tr. at 347]) predicts 12 months of impairment from that date.  Therefore the claimant met listing 11.04A from the AOD until 2/6/08 and from 2/7/08 and continuing, the claimant was capable of sedentary work with a

sit/stand option, occasional bending and stooping and no climbing or crawling and no lifting with the right arm or repetitive right arm movements.

Tr. 382-383.  Thereafter, Mulhall went to his treating physician, Dr. David Sambol, and his treating rehabilitation doctor, Dr. Kip Burkman.  Dr. Sambol, in a letter dated June 21, 2011, stated:

> I had mentioned in my note of 2/11/2009 that his lower extremity strength was equal.  I failed to expound upon the fact that his fine motor strength and coordination was still significantly abnormal which has affected his gait to the point where he has a slapping type foot drop on the right as well as a broad-based swinging leg gait at times as well.  It definitely affects his ability to walk any distance and also makes his ability to right himself very difficult.   This is not expected to improve and would be considered permanent."

Filing No. 14-2, Tr. at 12.  On behalf of Dr. Burkman, who was out of the country, Dr. Aiswarya Patil, of the Sports & Spine Rehab Clinic where Mulhall received his treatment, provided the following report on June 24, 2011:

> Mr. Mulhall suffered a Stroke on April 29, 2006 when he had an infarct in the Left Parietal lobe leading to Right sided weakness and Gait instability.
>
> I saw him in the Rehabilitation Clinic on 06/23/2011. He has residual weakness and spasticity in his right hand and leg, which leads to instability and difficulty during walking and performing his activities of daily living.
>
> In view of his residual deficits and disability from the Stroke, I do not feel that he can be competitively employable.   Recovery from Stroke is typically complete by 2 years and think this is the maximal functional recovery he has achieved.
>
> I support his application to request reconsideration for obtaining Social Security Benefits.

Filing No. 14-2, Tr. at 11.

Mulhall timely submitted these two new reports to the Appeals Council.  The Appeals Council did not include or consider the reports from Dr. Sambol or Dr.

Aiswayra. The Appeals Council ultimately concluded that claimant experienced medical improvement and was able to work as of February 6, 2008.  The vocational expert opined that claimant could perform sedentary and light occupations such as a receptionist, office manager, information clerk, and apartment manager, and such opinions were adopted by the ALJ.  Filing No. 14-2, Tr. at 53.

The court finds this conclusion is not supported by substantial evidence.  Medical improvement is defined, in accordance with 20 C.F.R. § 404.1594(b)(1), as "a decrease in the medical impairments present at the time of the most recent favorable medical condition."  See Burress v. Apfel, 141 F.3d 875, 879 (8th Cir. 1998).  The claimant must have improved so that he or she is able to perform substantial gainful activity.  Delph v. Astrue, 538 F.3d 940, 945 (8th Cir. 2008).  In his letter of February 7, 2007, Dr. Polin estimated the disability ceased in February 2008.  Filing No. 14-2,Tr. at 382-384.  He had no basis for this estimation, other than one of the treating physicians originally stated that Mulhall would be disabled for the next 12 months.  Dr. Polin came to this conclusion in spite of the fact that Mulhall returned to his treating doctor, Dr. Sambol, wherein he was treated for spasticity and placed on Baclofen.  During this same time period Mulhall walked with a cane and the spasticity continued in his right knee and elbow.  He had no functional use of his right hand.  On February 11, 2009, Dr. Sambol stated that this damage was considered permanent. Filing No. 14-2, Tr. at 12.  On June 23, 2011, Dr. Patil at the Spine Rehabilitation Clinic agreed that Mulhall had reached his maximum recovery.  Id. at 11.  Further, Dr. Polin made these conclusions based on a one-time review of the medical records, never having met with or examined Mulhall.

It is clear that the ALJ failed to fully develop the medical record in this case.  As the court stated above, it is the responsibility and duty of the ALJ to do so.  The ALJ and Appeals Council did not adequately consider spasticity, permanency, and only estimated the time of the alleged improvement.  They did not attempt to determine or obtain information from the treating physicians regarding the length of time of the disability, so they could avoid estimating such time.  A person must be able to ambulate effectively in order to work.  See Listing 11.04B; 1.00(B)(2).[1]  Further, evidence in support of claimant's impairments was submitted to the Appeals Council.  The Council either overlooked or ignored those records.  In those reports, Dr. Sambol noted that in his February 11, 2009, treatment notes, he failed to report Mulhall's difficulty with his fine motor strength and coordination that affected his gate.  Filing No. 14-2, Tr. at 31.  Dr. Sambol also indicated it was unlikely that claimant would improve.  Likewise, Dr. Patil submitted an opinion dated June 24, 2011, indicating that claimant still experienced weakness in his right hand and leg and often used a cane to ambulate.

---

[1] Listing 11.04B requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." *Id.*

Listing 1.00(B)(2)(b)   *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*See also* Listing 1.00(J)(4)   *Hand-held assistive devices*, when an individual with an impairment involving a lower extremity or extremities uses a hand held assistive device, such as a cane, crutch or walker, examination should be with and without the use of the assistive device . . . The requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing and pulling.

Filing No. 14-2, Tr. at 30.  He also indicated that claimant was not likely to improve.  *Id.* The government admits that the Appeals Council did not consider this evidence.[2]  The ALJ and the Appeals Council unduly relied on the consulting doctor in this case and failed to fully develop the record.

The court finds there is not substantial evidence to support the conclusion of the ALJ and Appeals Council, particularly given the credible, contrary evidence submitted by the treating doctors.  It is clear that both Dr. Patil and Dr. Sambol believe plaintiff is still significantly impaired and not likely to improve.  The Appeals Council had two opportunities to review this evidence, first when the claimant filed it and, second, when the claimant again requested the Appeals Council to consider it.  The Appeals Council declined on both occasions.  Further, the ALJ and Appeals Council failed to meet the burden of showing improvement.  There is no substantial evidence in that regard.  Thus, there is no reason to remand for further review.

"[W]here the medical evidence in the record overwhelmingly supports a finding of disability, remand is unnecessary."  *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Nalley v. Apfel*, 100 F. Supp. 2d 947, 954 (S.D. Ia. 2000).  The court determines that the record overwhelmingly supports a finding of disability.  Remand to take additional evidence in this case would only delay the receipt of benefits to which the plaintiff is entitled.

THEREFORE, IT IS ORDERED:

1.   The decision of the Commissioner is reversed;

2.   Mulhall's appeal is granted;

---

[2] The government asks the court to remand to allow additional review.  However, the court has already reviewed that motion, Filing No. 22, and declined to remand the case.  Filing No. 24.

3. This action is remanded to the Commissioner with instructions to award benefits.

4. A separate Judgment will be issued in conjunction with this Memorandum and Order.

5. Any motion for attorney fees shall be filed within 30 days of the date of this order; any objection thereto shall be filed within 30 days thereafter.

Dated this 12th day of March, 2013.

BY THE COURT:


s/ Joseph F. Bataillon
United States District Judge